STATE ex rel. RANKIN, Attorney General, Plaintiff, *v.*
NORTHERN PACIFIC RAILWAY CO. et al.,
Defendants.

(No. 4,806.)

(Submitted February 14, 1921. Resubmitted March 18, 1922. Decided
March 27, 1922.)

[205 Pac. 959.]

*Injunction—Railroads — Intrastate Passenger Rates — Statute
Fixing Rate — Unconstitutionality — Decision of United
States Supreme Court Controlling.*

1. In an action to enjoin the intrastate carriers of passengers in
Montana from exacting a per mile fare of three and six-tenths cents
under authority of an order of the Interstate Commerce Commission
issued on January 24, 1921, and to enforce the provision of Chapter
250, Laws of 1921 (sec. 6586, Rev. Codes 1921), fixing three cents
per mile as the maximum intrastate fare, *held*, under the decisions
of the supreme court of the United States in the New York and
Wisconsin rate cases (see opinion) decided February 27, 1922, that
the Interstate Commerce Commission has power to fix rates for in-
trastate travel under the provision of the Transportation Act of 1920
(41 Stat. 456), authorizing it to remove "any undue, unreasonable
or unjust discrimination against interstate or foreign commerce,"
and that the provision of Chapter 250 is therefore not capable of
enforcement.

Original application by the State of Montana, on the rela-
tion of Wellington D. Rankin, Attorney General, for Writ of
Injunction against the Northern Pacific Railway Company and
others. Proceeding dismissed.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. Ed-
mund G. Toomey,* Counsel for Board of Railroad Commission-
ers of the State of Montana, for Plaintiff, submitted a brief
and argued the cause orally.

*Mr. C. W. Bunn, Mr. D. F. Lyon* and *Messrs. Gunn, Rasch
& Hall,* for Defendants, submitted a brief; *Mr. Lyon* and *Mr.
M. S. Gunn* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original proceeding in injunction, prosecuted in this court after leave granted by the state upon the relation of its attorney general against the Northern Pacific Railway Company and eleven other corporate defendants named, constituting all the railroads engaged in intrastate transportation in Montana, and *pro forma* against the board of railroad commissioners of Montana.

The complaint was filed on January 31, 1921, the object [1] and purpose of the action being the enforcement of Chapter 87, Laws of 1905, as amended by Chapter 250, Laws of 1921 (sec. 6586, Rev. Codes 1921); in short, "the three-cent passenger fare law," which it is alleged the defendant threatened to violate by the exaction of a per mile passenger fare of three and six-tenths cents under color of an order of the Interstate Commerce Commission issued on January 24, 1921. It appears that suit was brought by the defendants herein, as plaintiffs, in the United States district court for the district of Montana on January 27, 1921, before complaint herein was filed, against the board of railroad commissioners and others charged with the enforcement and execution of the state's three-cent passenger fare statute, wherein it was sought to have the state law declared void for conflict with the federal Constitution and statutes; and defendants were, on January 27, 1921, restrained from enforcing the state law and from in anywise interfering with the order of the Interstate Commerce Commission. On account of the previous institution of suit in the federal court and the issuance of a restraining order therein, this court, in accord with the necessity for the orderly administration of justice, stayed the operations of the board of railroad commissioners under the three-cent fare law pending determination of the case in the federal court.

After the complaint was filed herein and order to show cause issued, the defendant carriers sought a removal of this

cause to the federal court, but their application in this regard was denied on February 10, 1921; it appearing that section 266 of the Federal Judicial Code (36 Stat. 1162; U. S. Comp. Stats., sec. 1243), clearly authorizes the trial of such a federal question in the state court.

Defendant carriers appeared by demurrer in this cause, alleging lack of jurisdiction over the subject of the action, defect of parties defendant because the United States was not joined as a party, and failure of the complaint to state facts sufficient to constitute a cause of action. Extensive argument was had on all the propositions involved. In common with other courts throughout the country, decision of the question involved was deferred because of the pendency of similar questions in the supreme court of the United States, whose decision on the merits is conclusive.

On February 27, 1922, the supreme court of the United States, through Mr. Chief Justice Taft, announced its decision in two cases, *Railroad Commission of Wisconsin et al.* v. *Chicago, B. & Q. R. R. Co.* (No. 206, October term, 1921), 42 Sup. Ct. Rep. 232, and the *State of New York ex rel.* v. *United States et al.* (No. 283, October term, 1921), 42 Sup. Ct. Rep. 239. From a review of the facts involved in those cases, and the facts presented herein, there is no room for doubt as to the application of those decisions and their consequent control in the case before us. In New York and in Wisconsin, as in Montana, the railroad carriers, following the proceedings before the Interstate Commerce Commission in *Ex parte, 74, Increased Rates*, 58 Inter. Com. Com. R. 220, made application to the proper state authorities for an increase in intrastate passenger fares, in conformity with the increase on interstate fares allowed by the Interstate Commerce Commission. The state authorities denied the applications on the ground that a state statute in each instance prescribed a maximum mileage fare for passengers in intrastate traffic. Thereupon the carriers commenced a proceeding before the Interstate Commerce Commission under section

13 of the Act to Regulate Commerce (24 Stat. 379) as amended June 18, 1910 (4 Fed. Stats. Ann., 2d ed., p. 453; U. S. Comp. Stats., sec. 8581), and February 28, 1920 (41 Stats. 456; Fed. Stats. Ann., 1920 ed., p. 72), for an order directing them to increase the fares in conformity with the percentage increase fixed as a standard by the Interstate Commerce Commission in the rate territories, including Wisconsin, New York and Montana. The federal orders prayed for resulted, after appropriate administrative investigation and hearing, and the fares were raised in each state notwithstanding, and in the face of, the state statutes. (As to Montana, see Montana Rates & Fares, 60 Inter. Com. Com. R. 61.)  In the *Wisconsin Case* the supreme court of the United States said: "Intrastate rates and the income from them must play a most important part in maintaining an adequate national railway system. Twenty per cent of the gross freight receipts of the railroads of the country are from intrastate traffic, and fifty per cent of the passenger receipts. The ratio of the gross intrastate revenue to the interstate revenue is a little less than one to three. If the rates, on which such receipts are based, are to be fixed at a substantially lower level than in interstate traffic, the share which the intrastate traffic will contribute will be proportionately less. If the railways are to earn a fixed net percentage of income, the lower the intrastate rates, the higher the interstate rates may have to be. The effective operation of the Act [Transportation Act of 1920, 41 Stat. 456–488; Fed. Stats. Ann., 1920 ed., p. 72] will reasonably and justly require that intrastate traffic should pay a fair proportionate share of the cost of maintaining an adequate railway system. Section 15a confers no power on the commission to deal with intrastate rates. What is done under that section is to be done by the commission 'in the exercise of its powers to prescribe just and reasonable rates,' *i. e.*, powers derived from previous amendments to the Interstate Commerce Act, which have never been construed or used to embrace the prescribing

of intrastate rates. When we turn to paragraph 4, section 13, however, and find the commission for the first time vested with a direct power to remove 'any undue, unreasonable, or unjust discrimination against interstate or foreign commerce,' it is impossible to escape the dovetail relation between that provision and the purpose of section 15a. If that purpose is interfered with by a disparity of intrastate rates, the commission is authorized to end the disparity by directly removing it, because it is plainly an 'undue, unreasonable and unjust discrimination against interstate or foreign commerce,' within the ordinary meaning of those words.  *  *  *  Congress in its control of its interstate commerce system is seeking in the Transportation Act to make the system adequate to the needs of the country by securing for it a reasonable compensatory return for all the work it does. The states are seeking to use that same system for intrastate traffic. That entails large duties and expenditures on the interstate commerce system which may burden it unless compensation is received for the intrastate business reasonably proportionate to that for the interstate business. Congress as the dominant controller of interstate commerce, may therefore, restrain undue limitation of the earning power of the interstate commerce system in doing state work." ·

And in the New York case the supreme court of the United States said: "We said in *Addystone Pipe & Steel Co.* v. *United States*, 175 U. S. 211, 230, [44 L. Ed. 217, 20 Sup. Ct. Rep. 96] : 'Anything which directly obstructs and thus regulates that commerce which is carried on among the states, whether it is state legislation or private contracts between individuals or corporations should be subject to the power of Congress in the regulation of that commerce.'. (*Louisville & Nashville R. R.* v. *Mottley*, 219 U. S. 467, [34 L. R. A. (n. s.) 671, 55 L. Ed. 297, 31 Sup. Ct. Rep. 265] ; see, also, *Scranton* v. *Wheeler*, 179 U. S. 141, 162, 163, [45 L. Ed. 126, 21 Sup. Ct. Rep. 48] ; *Union Bridge Co.* v. *United States*, 204 U. S. 364, 400, [51 L. Ed. 523, 27 Sup. Ct. Rep. 367].)

''The main objections to the order are the same as those presented, considered and overruled in the Wisconsin rate case just decided. The evidence in this case shows that, if the passenger and other rates here in controversy were to continue in force as ruled by the Public Service Commission of New York, the annual gross revenues of the interstate railroads operating in the state of New York from both interstate and intrastate passenger and milk business would be less by nearly twelve millions of dollars than those revenues if the intrastate fares and rates were on the same level as the interstate rates as fixed by the Interstate Commerce Commission. If the lower level of intrastate fares and rates is to be maintained, it will discriminate against interstate commerce, in that it will require higher fares and rates in the interstate commerce of the state to secure the income for which the Interstate Commerce Commission must attempt to provide by fixing rates under section 15a of the Interstate Commerce Act as amended by section 422 of the Transportation Act of 1920, 41 Stat. 456, 488, in carrying out the declared congressional purpose 'to provide the people of the United States with adequate transportation.' As we have just held in the *Wisconsin Case,* this constitutes 'undue, unreasonable and unjust discrimination against interstate commerce,' which is declared to be unlawful and prohibited by section 13, paragraph 4, of the Interstate Commerce Act, as amended by section 416 of the Transportation Act of 1920, 41 Stat. 456, 484, and which the Interstate Commerce Commission is authorized therein to remove by fixing intrastate rates for the purpose.''

The validity of the orders of the Interstate Commerce Commission is now beyond challenge in consequence of these unanimous decisions of the supreme court of the United States, after almost a year of deliberation in these cases presented, argued and reargued.

As sweeping and revolutionary as these decisions may appear to those jealous of states' rights, the questions herein involved must be accepted as finally determined. Our view

as to the proper construction of the federal Constitution and statutes becomes wholly unimportant, and there is nothing left to be done other than to bow to the paramount authority asserted by the federal government.

Accordingly this proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and HOLLOWAY concur.